UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CYRIL RICHARD BENSON | * | |
| Plaintiff | * | |
| | * | |
| v. | * | CIVIL NO. L-10-481 |
| | * | |
| CANDOR MORTGAGE CORPORATION, | * | |
| et al. | * | |
| Defendants | * | |

*******

MEMORANDUM

This case arises from a real estate purchase gone awry. Now pending are unopposed motions to dismiss by Defendants BAC Home Loans Servicing, LP ("BAC") and Village Capital & Investment ("Village"). Docket Nos. 16, 20. No hearing is necessary to decide this matter. See Local Rule 105.6 (D. Md. 2008). For the reasons set forth below, the Court will, by separate Order of even date, GRANT BAC's motion and GRANT Village's motion IN PART.

**I.     Background**

The essential facts alleged in Plaintiff Cyril Benson's Complaint are as follows. On November 28, 2007, Benson signed a one-year lease for a residence in Glen Burnie, Maryland. Compl. ¶ 6. The lease also contained an option to buy the property. In November 2008, Benson elected to exercise the option, and Benson's realtor referred him to Defendant Candor Mortgage Corporation ("Candor"), a mortgage broker. Id. ¶¶ 11-14.

Taking the allegations in the Complaint as true, it appears that Candor used a "bait-and-switch" to retain Benson's business. Initially, Candor offered Benson favorable loan terms and a cash-back refund. Id. ¶ 18. Benson took the bait, and Candor made the switch at closing by changing several loan terms including the purchase price, demanding a cash payment, and refusing to pay the promised refund. Id.

Benson noticed these problems, objected to them, and was told that "he had . . . to sign the loan agreement" or face eviction. Id. ¶ 19. Benson also alleges that the Defendants (he does not specify which ones) informed him that "any mistakes in the documentation would be immediately corrected" but that no corrections were ever made. Id. ¶ 20. Nevertheless, it is undisputed that Benson ultimately agreed to the loan agreement presented at closing.

Benson alleges that, on the day following the closing, he informed Candor that he believed the loan to be fraudulent and would not be making further payments. Id. ¶ 25. Benson alleges that Candor informed him that Village now owned his loan. Id. ¶ 26. Benson then alleges that he contacted Village, who informed him that "Bank of America/Countrywide" owned his loan. Id. ¶ 27. Benson also alleges that Village began advancing payments on his behalf to "Bank of America/Countrywide," intending for the mortgage insurance to mature on the property, despite its knowledge that Benson intended to default. Id. ¶¶ 31-33.

Benson alleges that "Bank of America/Countrywide" initially informed him that it was "merely acting in the capacity of servicer of the loan." Id. ¶ 28. Benson alleges that, on December 9, 2008, Village sold the loan to "Bank of America," who, after receiving repeated calls from Benson, denied him access to his account. Id. ¶ 29.

Benson initially filed suit in the Circuit Court for Anne Arundel County. His Complaint includes eight counts, as follows: negligence (Count I), fraud (Count II), fraud in the inducement (Count III), constructive fraud (Count IV), negligent misrepresentation (Count V), concealment (Count VI), gross negligence (Count VII), and mortgage fraud in violation of section 7-402 of the Real Property Article of the Maryland Code (Count VIII).

Village removed the case to this Court under federal question jurisdiction.  See Docket No. 1.  BAC consented to the removal, and both BAC and Village filed motions to dismiss.  To date, Candor has not been served.

Benson responded to BAC's motion simply by requesting a hearing.  See Docket No. 22.  He did not file a memorandum of law or dispute any of BAC's factual or legal arguments.  Benson's response to Village's motion was due by April 8, 2010, but he has not filed an opposition or had any communications with the Court since responding to BAC's motion.  The Defendants' motions could be granted on this ground alone.  Nevertheless, the Court will examine the Complaint to determine whether it has any ostensible merit.

## II.     Discussion

### A.     Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead plausible, not merely conceivable, facts in support of his claim.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965.  The Court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### B.     Analysis

As a threshold matter, most of the allegations in the Complaint refer generally to "[the] Defendants."  It is undisputed that Candor was the mortgage broker and Village was the

originating lender for the transaction at issue.[1]  Although Benson has sued "Bank of America, Inc.," alleging that it presently services and owns his loan, BAC avers that it is the proper party and that Bank of America, Inc. "does not exist."  Mot. 2 n.1.

Given these facts, only Candor could have plausibly communicated with Benson prior to the closing.[2]  Therefore, any claims arising from representations made prior to the closing must be dismissed as to Village and BAC.  See Twombly, 550 U.S. at 570 (the facts must "state a claim to relief that is plausible on its face").  Likewise, any claims arising from the origination of the loan must be dismissed as to BAC.  Id.  At the motion to dismiss stage, however, the Court is required to draw the inference that Village, the originating lender, approved Benson's loan application and was present at the closing.

With these principles in mind, the Court will analyze Benson's Complaint on a claim-by-claim basis.

### 1.    Negligence Claims: Counts I and VII

In Counts I and VII, Benson asserts claims based on negligence and gross negligence. Benson generally contends that the Defendants failed to exercise reasonable care in processing his mortgage loan application, verifying the validity of the closing documents, providing accurate documentation at the closing, and investigating Benson's claims of fraudulent practices. These claims must be dismissed for several reasons.

---

[1] See Compl. ¶ 3 ("Candor Mortgage is the broker for the transaction at issue."); ¶ 4 ("Village Capital is the lender for the transaction at issue.").

[2] See Compl. ¶¶ 26-27 ("[After the closing], Candor representatives told the Plaintiff that they 'no longer have [his] loan' and that Village Capital does.  Village Capital representatives told the Plaintiff that Bank of America/Countrywide actually owns his loan.").

First, as discussed above, neither BAC nor Village had any contact with Benson prior to the closing. Therefore, any negligent acts alleged to have occurred prior to the closing cannot plausibly be attributed to BAC or Village.

Second, assuming that Village acted negligently by approving Benson's loan application and advancing payments on his behalf, Benson lacks standing to pursue any claims arising from these acts. Standing is an important constitutional and prudential limitation on the Article III jurisdiction of the federal courts. To establish standing, a plaintiff must show that "(1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 230-31 (4th Cir. 2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Benson lacks standing to pursue claims arising from these acts because Village's alleged negligence benefitted him. For example, by negligently processing Benson's application, Village approved him for a loan that he might not have received otherwise. Likewise, by advancing payments to BAC on Benson's behalf when, as Benson admits, he intended to default, Village postponed foreclosure.

Benson also claims that the Defendants were negligent because they failed to verify the validity of the closing documents and investigate his claims of fraud. Benson, however, cannot establish that BAC and Village owed him a duty of care. Absent special circumstances, Maryland courts have been "exceedingly reluctant to . . . impose any duties on the bank not found in the loan agreement." Jacques v. First National Bank of Maryland, 307 Md. 527, 531 (1986); see also Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC, 158 F. Supp. 2d 631, 640 (D. Md. 2001) ("[A] lender in Maryland owes no duty in tort to reasonably process a

loan, absent extraordinary risk or particular vulnerability or dependency on the part of the borrower."). Benson does not allege that BAC or Village breached the loan agreement, that there were extraordinary circumstances surrounding the transaction, or that he is a particularly vulnerable individual. Therefore, his failure-to-investigate claims must be dismissed.

### 2.     Fraud and Concealment Claims: Counts II, III, IV, V, and VI

Benson's fraud and concealment claims must be dismissed as to BAC because, as discussed above, it cannot plausibly have played a role in the closing. Even assuming that Village was present at the closing, these claims also must be dismissed as to Village.

First, the fraud claims were not pled with the requisite degree of particularity. To state a fraud claim under Maryland law, a plaintiff must allege five elements: (1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result. See Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 333 (1982) (quoting Gittings v. Von Dorn, 136 Md. 10, 15-16, 109 A. 553, 554 (1920)). Further, under the Federal Rules, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

In the instant case, Benson's fraud claims are based on vague, conclusory allegations. Even assuming that all of the alleged misrepresentations were made at the closing, Benson has

not identified which defendants made the misrepresentations and what those defendants obtained thereby.

Second, Benson cannot establish that he relied on the alleged misrepresentations. Benson alleges that he knew that the terms of the loan agreement had been altered, that he voiced his objections, that he signed the agreement under duress, and that he immediately informed Candor that he planned to default. These allegations do not establish reliance.

Further, assuming that Benson could prove that he relied on the Defendants' representations, his reliance was unreasonable given the facts alleged. In determining whether reliance is reasonable, a Maryland court must "view the act in its setting, which will include the implications and promptings of usage and fair dealing." Giant Food v. Ice King, 74 Md. App. 183, 192, cert denied, 313 Md. 7 (1988) (citation omitted). Under the facts alleged, it was entirely unreasonable for Benson to have relied on any of the Defendants' representations, let alone to have signed the loan agreement. Therefore, his common law fraud claims must also be dismissed as to Village.

### 3. Mortgage Fraud: Count VIII

Benson alleges that the Defendants engaged in mortgage fraud in violation of section 7-402 of the Real Property article of the Maryland Code. The statute lists six categories of acts that constitute mortgage fraud. See Md. Code, Real Prop. § 7-402(d)(1)-(6) (West 2010) (defining mortgage fraud). The following allegations are at the heart of Benson's claim under the statute: that Village made misrepresentations at the closing, that Village advanced payments on Benson's behalf, that Village and BAC received proceeds in connection with a mortgage closing that they knew to be fraudulent, and that Village and BAC filed documents in the land

records of Anne Arundel County that they knew "to contain a deliberate misstatement, misrepresentation, or omission." § 7-402(d)(6).

Benson's claim is defective in several respects.  BAC must be dismissed because, as discussed above, it cannot plausibly have played any role in the closing.  Further, Benson has not alleged how BAC could have known that the mortgage had been obtained fraudulently, which is a common element of each act in the statute.  See § 7-402(d)(1)-(6).  Finally, Benson lacks standing to bring any claims based on the allegation that Village advanced payments on Benson's behalf because he was not injured by that act.

Nevertheless, the Complaint does state a viable claim as to Village.  Essentially, Benson alleges that Village made false statements at the closing, acquired knowledge that the loan agreement was procured fraudulently by virtue of its participation in the closing, received funds knowing that the mortgage was fraudulent, and filed documents knowing that the mortgage was fraudulent.  These allegations are sufficient to state a claim upon which relief could be granted under the statute.

The Court is mindful, however, that this claim is not well-pleaded and that Benson has not responded to Village's motion, served Candor, or otherwise communicated with the Court.[3]

---

3   As discussed above, Village removed this case from the Circuit Court for Anne Arundel County on March 1, 2010.  Village was served by mail on January 28, 2010.  See Docket No. 17.  Although there is no indication in the record that BAC has been served, BAC waived any objections to defects in service of process by filing its motion to dismiss.  See Fed. R. Civ. P. 12(h); see also Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002) ("Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance.").
   To date, Defendant Candor has not been served.  Benson must serve Candor by July 1, 2010, or his Complaint will be dismissed without prejudice.  See Eccles v. Nat'l Semiconductor Corp., 10 F. Supp. 2d 514, 519 (D. Md. 1998) (holding that the 120-day time period for service of process in a removal action runs from the date of the removal); Motsinger v. Flynt, 119 F.R.D. 373 (M.D.N.C. 1988) (same).

Under these circumstances, it would be unfair to force Village to defend itself against the claim as presently pled. Accordingly, the Court will grant Benson three weeks to file an amended Complaint.

### III.  Conclusion

The Court will, by separate Order of even date, GRANT BAC's motion, GRANT Village's motion IN PART, and GRANT Benson three weeks to file an amended Complaint. If Benson does not file an amended Complaint, the Court will dismiss Count VIII as to Village.

Dated this  27th  of April, 2010.                         /s/
                                                     Benson Everett Legg
                                                     United States District Judge